UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEMHAL SIRAJ,

           Plaintiff,

  v.

BAYER HEALTHCARE LLC,

           Defendant.
_____/

No. C 09-00233 SI

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      The Court held a hearing on defendant's motion for summary judgment on February 26, 2010. For the reasons set forth below, the Court hereby DENIES defendant's motion.

**BACKGROUND**

      Plaintiff Semhal Siraj filed a complaint against defendant Bayer HealthCare LLC in Alameda County Superior Court on December 18, 2008. The case was removed to this Court on January 20, 2009. Subject matter jurisdiction is based on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332(a). Plaintiff alleges the following causes of action: (1) disability discrimination via termination in violation of the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12940(a), (2) failure to provide reasonable accommodations in violation of FEHA, Cal. Gov't Code § 12940(m), (3) failure to engage in an interactive process in violation of FEHA, Cal. Gov't Code § 12940(n), and (4) wrongful termination in violation of public policy. Defendant has moved for summary judgment as to all claims.

      Plaintiff Semhal Siraj was a Production Technician in the Berkeley, CA facility of defendant Bayer HealthCare LLC. The Berkeley facility is responsible for biotechnology and biological products research, development, and manufacturing. Plaintiff started working in the Media/Fermentation

department ("Building 55") at the Berkeley facility in May 2005. The Media/Fermentation department manufactures blood products for hemophiliacs, and plaintiff's general responsibility was to take care of the fermentation process to keep the cells alive and avoid contamination. The department operates on a 24-hour production schedule, with employees working 10.5 hour shifts in teams of 2 or 3. Siraj Depo., Docket No. 46, Ex. A at 72:1.

On February 25, 2007, plaintiff injured her right hand while trying to hang a harvest bag at work. The injury was diagnosed by Dr. Douglas Chin as "radial tunnel syndrome," which presented as cramping and fatigue in her right forearm. Plaintiff was able to return to work in March 2007, but was limited to some extent by a set of physical restrictions prescribed by Dr. Chin. At that time, the restrictions were "no repetitive, sustained or forceful use of the right hand." Royle Depo., Docket No. 46, Ex. C at 52:25. Plaintiff discussed the restrictions with her supervisors, and was reminded on at least one occasion that she should not exceed those restrictions. Siraj Depo. at 75:13. To stay within her restrictions, plaintiff would ask her shift partner(s) for help with any task that "require[d] lifting or pulling heavy stuff." *Id.* at 72:21. From March to October 2007, plaintiff continued to work as a Technician in Building 55. Defendant contends that from the time the medical restrictions were implemented, plaintiff was not able to perform several of her essential job duties, but that defendant temporarily allowed plaintiff's two coworkers to perform those tasks.

In October 2007, to accommodate a labor shortage, defendant transferred a number of employees out of the Media/Fermentation department (Building 55). As a result, the Building 55 shifts were downsized from three operators to two operators per shift. From October 2007 to January 2008, Building 55 was shut down, and plaintiff was able to perform paperwork within her restrictions during that time. When production resumed in January 2008, plaintiff was assigned to fill-in for Rachel Rodriguez (5:00 a.m. - 3:30 p.m. shift), who had gone on maternity leave. Plaintiff worked with one other employee, Anteneh Haile, during that shift. Haile states that "[i]t is customary that those persons working the same shift work together to split up the standard work in order to ensure that all the processes for the day are completed." Haile Decl., Docket No. 51 at 2. Haile also noted that "[plaintiff]

and I worked as a team to accomplish those tasks listed on the Standard Work form on a daily basis and would between the two of us decide how to split up the work." *Id.*

In March 2008, plaintiff's physician changed the status of her work restrictions from temporary to permanent. At the behest of Bayer management, plaintiff's manager Saulye Sherrell conducted an assessment of the department's ability to accommodate plaintiff on a permanent basis. Sherrell Decl. ¶ 7. On April 18, Sherrell submitted her follow-up assessment to Bayer Occupational Health, concluding that Building 55 could no longer accommodate plaintiff's work restrictions. *Id.* ¶ 8. According to Sherrell, the reasons that defendant was no longer able to accommodate plaintiff included: the reduction of operators working from 3 per shift to 2 per shift, the production shutdown during which plaintiff was able to perform paperwork, and the change in status of the restrictions from temporary to permanent. *Id.*

In May 2008, defendant asked for and received a more specific description of plaintiff's restrictions, which included: (1) no cable-tying for longer than 2 minutes continuously, followed by a minimum of 5 minutes rest and/or alternate work activities, (2) no pipetting for longer than 20 minutes continuously, followed by a minimum of 30 minutes of rest and/or alternate work activities, (3) no lifting more than 5 pounds with the unassisted right hand, (4) no repetitive use of the right hand for greater than 20 minutes continuously, followed by a minimum of 30 minutes of rest and/or alternate work activities. Larios Decl., Docket No. 44 at 1.

Plaintiff's expert, Jeff Malmuth, is of the opinion that plaintiff could still perform many of the tasks associated with her position. Docket No. 62, Ex. A. Malmuth stated that plaintiff could lift items significantly heavier than 10 pounds despite her restrictions by using primarily her left hand. *Id.* at 74:11. Furthermore, Malmuth believes that plaintiff could even perform the job functions that required repetitive use of the right hand, as long as she did not exceed the 20 minute limit without taking a break or switching activities. *Id.* at 83:18. Defendant objects to much of Malmuth's testimony, saying that it is "conclusory and defies common sense." Docket No. 63 at 3.

Following an Accommodations Review Meeting on May 15, 2008, Sherrell asked two of

plaintiff's supervisors, Winsor Larios and Noel Reyes, to conduct a written analysis of the physical demands of standard work for Media/Fermentation shifts. Sherrell Declaration ¶ 11; Exhibit G. On May 20, 2008, plaintiff was called into a meeting with representatives from Bayer Human Resources and Bayer Occupational Health, where she was told that her permanent restrictions could not be accommodated. Plaintiff's Opposition at 8. Plaintiff was asked to turn in her badge and keys at this time, and was placed on medical leave. *Id.* On May 29, 2009, Siraj exceeded the maximum leave provisions under the governing CBA. Russey Decl., Docket No. 43. Bayer technically continues to employ plaintiff, although she does not receive any monetary compensation or benefits. *Id.*

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Id.* at 325.

The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility

1 determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

Although the parties treat plaintiff's claims separately, the substance of the first three claims overlap to a significant degree. The first cause of action alleges that plaintiff was discriminated against based on her injury because she was placed on medical leave when she could in fact perform all of her essential job functions. The defense to the discrimination claim is that plaintiff was "unable to perform her essential duties even with reasonable accommodations." Cal. Gov't Code § 12940(a)(1). The second cause of action alleges that defendant failed to accommodate plaintiff because although she could complete all required tasks with the help of a shift partner, Bayer denied her that opportunity. The third cause of action alleges that defendant failed to engage in the interactive process potential accommodations with plaintiff. The central issue in this case is whether it was permissible for defendant to place plaintiff on permanent leave because medical restrictions rendered her unable to complete every job task *by herself*, despite the fact that she and her shift partner were able to complete the tasks *as a team*.

## I. Disability Discrimination

Plaintiff claims that defendant's act of placing her on medical leave constituted disability discrimination in violation of the California Fair Employment and Housing Act (FEHA). To prove disability discrimination, plaintiff needs to demonstrate that defendant "impermissibly discriminated because plaintiff was able to do the job with or without reasonable accommodation." *Green v. State of Calif.*, 165 P.3d 118, 123 (Cal. 2007). Under the FEHA, it is plaintiff's initial burden to demonstrate

that "he or she is a qualified individual under the FEHA (i.e., that he or she can perform the essential functions of the job with or without reasonable accommodation)." *Id.* at 121. Disability discrimination cannot be shown if the plaintiff was "unable to perform . . . her essential duties even with reasonable accommodations, or [could not] perform those duties in a manner that would not endanger . . . her health or safety or the health or safety of others even with reasonable accommodations." Cal. Gov. Code § 12940(a)(1).

"'Essential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires," but "does not include the marginal functions of the position." Cal. Gov. Code § 12926(f). Evidence relevant to whether a particular function is essential includes, but is not limited to: the employer's judgment as to which functions are essential, written job descriptions, the amount of time spent on the job performing the function, the consequences of not requiring the incumbent to perform the function, terms of the collective bargaining agreement, work experiences of past incumbents, and the current work experience of incumbents in similar jobs. Cal. Gov. Code § 12926(f)(2)(A-G).

Defendant argues that the essential job responsibilities of a Production Technician are clearly delineated, and that plaintiff was unable to fulfill those duties. Defendant asserts that the standard work forms for Building 55, which list all of the tasks that must be completed during a given shift, constitutes a comprehensive list of plaintiff's essential duties. However, in support of this assertion defendant only offers the circular argument that "all tasks listed on the Standard Work forms are essential duties for all Technicians . . . because the reason for the Production Technician position is to perform whichever Standard Work tasks need to be completed while the Technician is on duty." Defendant's Motion at 16. Plaintiff readily admitted that her restrictions often forced her to seek assistance from her partner, Mr. Haile, especially in tasks that involved manipulating heavy containers. Defendant argues that once plaintiff stopped working with Mr. Haile, "there [was] no guarantee that [plaintiff's] new coworker would have been equally willing to do [plaintiff's] work . . . [t]here is certainly no reason why the coworker would be *required* to do so." *Id.* at 18. Based on that reasoning, defendant concludes that "it

6

was essential that Siraj be able to perform *all* the standard work tasks herself, not just some of them." *Id.*

It is undisputed that plaintiff was unable to perform some of the tasks associated with her assigned shift. This fact, however, does not necessarily compel a finding that plaintiff was unable to perform her *essential* duties. Defendant devised the work schedule for its employees, and chose to have them work in teams of three (and later two in response to a labor shortage). The evidence before the Court at this time does not indicate that there was any required manner in which the employees in Building 55 were supposed to divide the labor. Plaintiff and Mr. Haile were seemingly able to devise an arrangement in which all of the tasks were completed. Defendant refers to this division of labor as creating a "light-duty" position for plaintiff, and frames that position as a means for her to avoid performing the essential duties of the position. It is possible, however, that plaintiff compensated for her inability to lift heavy objects by performing a greater number of tasks that would not violate her medical restrictions. The Court finds that there is a triable issue of fact as to what the essential functions of plaintiff's job actually were, and whether she was able to perform those functions.

Defendant also argues that the testimony offered by plaintiff's expert Jeff Malmuth is "absurd," because he states that plaintiff could perform duties that required her to lift objects weighing greater than ten pounds.[1] Defendant's Reply at 4. Defendant asserts that because the restrictions rendered plaintiff unable to lift more than five pounds with the unassisted right hand, she would be unable to lift more than ten pounds using both hands. The Court does not agree with defendant's logic. While it is certainly possible to pick up a ten pound object using each hand equally, it is also possible to pick up that object using one hand, or using primarily one hand and the other to balance. Malmuth said that plaintiff was able lift, within her restrictions, items that ranged in weight from 3.35 to 12.35 kilograms (7.4 to 27.2

---

[1] Defendant objects to Malmuth's statements, arguing that they are conclusory and defy common sense. Docket No. 63. The Court finds that these contentions go to the weight rather than the admissibility of the evidence, and can be contested during cross-examination. The objections are therefore overruled. Defendant also raises objections to plaintiff's characterization of certain facts, which are overruled as well.

7

pounds). Malmuth Report, Docket No. 46, Ex. D at 60. If lifting items in that range was an essential function of plaintiff's job, there is a triable issue of fact as to whether plaintiff could lift them without violating her medical restrictions.

## II. Failure to Engage in the Interactive Process and Failure to Accommodate

Plaintiff alleges that defendant violated the FEHA by failing to engage in an interactive process with plaintiff to accommodate her disability. Section 12940 provides, in relevant part, that it is unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." See Cal. Gov. Code § 12940(n). An "employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." *Jensen v. Wells Fargo Bank*, 102 Cal. Rptr. 2d 55, 68 (Cal. App. 2000).

Defendant first contends that it had no duty to create a "light-duty" position for plaintiff on a permanent basis. "[A]n employer has no duty . . . to accommodate a disabled employee by making a temporary accommodation permanent if doing so would require the employer to create a new position just for the employee." *Raine v. City of Burbank*, 37 Cal. Rptr. 3d 899, 908 (Cal. App. 2006). Plaintiff argues that she was never performing a "light-duty" position, and was therefore not requesting that defendant create a permanent version. The accommodation requested by plaintiff was to be allowed to continue her old job as a Technician, not to be given another position. The differences between the two parties on this point again stem from the question of whether plaintiff was able to perform the essential

8

functions of her job within the medical restrictions, which has been addressed above.

Defendant also argues that plaintiff's claims for failure to accommodate must be dismissed because "reasonable accommodation was offered and refused." *Jensen v. Wells Fargo Bank*, 102 Cal. Rptr. at 68. A reasonable accommodation may include "job restructuring, reassignment to a vacant position, part-time or modified work schedules, acquisition or modification of equipment or devices, adjustment or modification of examinations, training materials or policies . . . and other similar actions." *Watkins v. Ameripride Servs.*, 375 F.3d 821, 828 (9th Cir. 2004) (citing Cal. Code Regs. tit. 2, § 7293.9(a)(2)). A Bayer representative left a phone message for plaintiff shortly after she was placed on leave, offering plaintiff a chance to apply for a position with the Conformance division. Plaintiff did not return that call, citing the fact that she did not want the position because it was not covered by her union's collective bargaining agreement, and she would thus lose her seniority and benefits. Plaintiff also notes that she was not actually offered the position, but was merely offered the opportunity to apply. Plaintiff also states that the open position with Conformance was awarded to a former Supervisor, and other employees with the same background as plaintiff were passed over. Plaintiff interprets these facts as proof that she never had a chance to obtain the Conformance position. Defendant counters that plaintiff would have been seriously considered for the position, but never she never gave the company a chance because she failed to return the call. Defendant also points out that the position with Conformance was actually more highly paid than her previous job, and therefore would have constituted a reasonable accommodation even though it was non-union. The Court finds that there is a disputed issue over whether giving plaintiff the option to apply for a position with Conformance constitutes a "reasonable accommodation [that] was offered and refused." *Jensen*, Cal. Rptr. 102 2d at 68.

Defendant also moves for summary judgment on plaintiff's claim that defendant failed to engage in the interactive process. Defendant supports its position with several facts, including: plaintiff's supervisors discussed the medical restrictions with her, at least some of those supervisors reminded her to stay within the restrictions, and representatives contacted her about the opening in the Conformance

9

1  division. Plaintiff argues that defendant only discussed potential accommodations internally, and that "she never once sat down with anyone from Bayer to accommodate those restrictions." Plaintiff's Opposition at 23. Whether these interactions constitute a failure "to engage in a timely, good faith, interactive process with the employee" is not clear, and summary judgment on the issue at this stage would therefore be inappropriate.

The Court finds that there are disputed issues as to whether plaintiff's disability could reasonably have been accommodated, the degree to which defendant engaged in an interactive process with plaintiff, and whether such a process could have been fruitful.

### III.  Wrongful Termination

Defendant argues that plaintiff's wrongful termination claim fails because plaintiff cannot establish that defendant violated the FEHA. As discussed above, the Court finds that there are triable issues on plaintiff's FEHA claim.

Defendant also contends that plaintiff cannot maintain a wrongful termination claim because she was not actually terminated as an employee. Instead, "she remains on medical leave of absence until she is able to perform the essential functions of her position." Defendant's Reply at 14. Plaintiff contends that placement on medical leave of absence is "constructive termination," which traditionally requires a showing that "the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1029 (Cal. 1994). At the hearing, the parties clarified that plaintiff is not receiving any monetary compensation or benefits, even though she is still technically employed by defendant. Rather, plaintiff remains an employee as a technicality, so that if her medical restrictions were to be lifted she could be reinstated into her previously held position. Although plaintiff did not technically resign, she was asked to turn in her keys and badge, and no longer receives payment of any kind. Whether this arrangement constitutes constructive termination

10

is unclear, and summary judgment is therefore denied.

**CONCLUSION**

For the foregoing reasons, the Court hereby DENIES defendant's motion for summary judgment. (Docket No. 42).

**IT IS SO ORDERED.**

Dated: March 8, 2010

SUSAN ILLSTON
United States District Judge

11